Nick A. Urick (SBN 264556)
nurick@nickuricklaw.com
Christopher P. Dobbins (SBN 258002)
cdobbins@nickuricklaw.com
**LAW OFFICE OF NICKOLAS A URICK**
PO Box 371
La Puente, CA 91747
Tele: (626) 419-3600
Fax:  (626) 602-3836

Dan M. Siegel (SBN 56400)
Danmsiegel@gmail.com
**SIEGEL, YEE, BRUNNER & MEHTA**
475 14th Street, Suite 500
Oakland, CA  94612
Tel. (510) 839-1200
Fax. (510) 444-6698

Shumsha Hanif-Cruz (SBN 225639)
shumshalaw@yahoo.com
**SHC LAW**
1939 Harrison Street, Suite 924
Oakland, CA 94612
Telephone: (510) 318-6318
Facsimile: (510) 318-6319

Attorneys for Plaintiffs
MARCUS JOHNSON, MISHA KARIGACA, MANUEL LABRADOR,
and KENYA LATTIMORE

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANSICO DIVISION

| | |
|---|---|
| MISHA KARIGACA, KENYA LATTIMORE, MARCUS JOHNSON; and MANUEL LABRADOR | ) **Case No.** |
| | ) |
| | ) **COMPLAINT FOR DAMAGES** |
| Plaintiffs, | ) |
| vs. | ) |
| | ) |
| SOUTHWEST AIRLINES CO., a corporation, COUNTY OF ALAMEDA, a public entity; DOES 1-100; inclusive, | ) |
| | ) |
| | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| Defendants. | ) |

Plaintiffs MISHA KARIGACA (KARIGACA); KENYA LATTIMORE (LATTIMORE); MARCUS JOHNSON (JOHNSON); and MANUEL LABRADOR (LABRADOR) (herein collectively "Plaintiffs") by and through their attorneys, the Law Office of Nickolas A Urick; Siegel, Yee, Brunner & Mehta; and SHC LAW hereby complain and allege against Defendants SOUTHWEST AIRLINES CO. and the COUNTY OF ALAMEDA as follows:

## I.     PARTIES

1.      Defendant SOUTHWEST AIRLINES CO. (SOUTHWEST), is a Texas Corporation that does business in the State of California, County of Alameda, under Entity No. C1096257, and is an airline transportation company for passengers and cargo with its listed corporate headquarter in Dallas, Texas.

2.      Defendant ALAMEDA COUNTY (ALAMEDA) is a public entity in the State of California, County of Alameda.

3.      The Alameda County Sheriff's Department is a law enforcement agency operating under and within Defendant ALAMEDA.

4.      Plaintiff KARIGACA is an African-American male residing in the State of California, County of Alameda, and a citizen of the United States.

5.      Plaintiff LATTIMORE is an African-American male residing in the State of California, County of Alameda, and a citizen of the United States.

6.      Plaintiff JOHNSON is an African-American male residing in the State of California, County of Los Angeles, and a citizen of the United States.

7.      Plaintiff LABRADOR is a Filipino/Chinese-American male residing in the State of California, County of Alameda, and a citizen of the United States.

## II.   JURISDICTION AND VENUE

8.      This court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the claims averred herein arise out of civil rights violations under the Civil rights Act of 1991, 42 U.S.C. §§ 1981 and 1983.  This court has jurisdiction under 28 U.S.C. § 1332, as this matter involves an amount in controversy exceeding $75,000.00 between citizens of different states.  The court has supplemental jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. § 1367, as they form the same case and controversy as the federal claims and arise out of the same discriminatory events as Plaintiffs' federal claims.

9.      Venue lies within this judicial district pursuant to the provisions of 28 U.S.C § 1391(b)(2), as a substantial part of the events or omissions giving rise to these claims occurred in this district.

## III.   GENERAL ALLEGATIONS

10.      That this is an action brought by Plaintiffs alleging violations of discrimination based on race under the Unruh Civil Rights Act; 42 U.S.C. §§ 1981 and 1983; and False Imprisonment; Malicious Prosecution; and Intentional Infliction of Emotional Distress.

11.      Plaintiff KARIGACA is an African-American male who was 45 years old at the time of the incident.  KARIGACA holds a senior position in the Oakland Unified School District and graduated from the University California Los Angeles wherein he holds a Bachelor of Arts degree in Sociology.

12.      Plaintiff LATTIMORE is an African-American male who was 46 years old at the time of the incident.  LATTIMORE is an After-School Coordinator in the Oakland Unified

School District and holds a Bachelor of Arts Degree in African-American Studies from University California Berkeley.

13.     Plaintiff JOHNSON is an African-American male who was 45 years old at the time of the incident.  JOHNSON is a Senior Vice President of a major financial institution and holds a Bachelor of Arts Degree in Social Psychology from University California Los Angeles.

14.     Plaintiff LABRADOR is a Filipino/Chinese-American male who was 45 years old at the time of the incident.  LABRADOR is an Elementary School Teacher in Oakland Unified School District and holds a Bachelor of Science Degree in Psychology from University California Los Angeles.

15.     Plaintiffs have been long time friends and are all avid professional baseball fans.

16.     On Saturday, April 14, 2018, Plaintiffs booked and boarded SOUTHWEST Flight 5985 from Oakland to Burbank, California to attend the annual celebration of Jackie Robinson Day at Dodgers Stadium on Sunday, April 15, 2018.

17.     Jackie Robinson is a member of the Baseball Hall of Fame and is credited with breaking the "color barrier" in 1947 when he, as an African-American baseball player, was integrated into the Major Leagues which was then an "all-white" baseball league.

18.     Jackie Robinson was a member of the (then) Brooklyn Dodgers Baseball Club and the Los Angeles Dodgers pay "homage" to Jackie Robinson every April 15th by devoting a special day in his honor.

19.    The Plaintiffs, four men of color, wanted to participate in the celebration of Jackie Robinson's legacy, and one of the Plaintiffs, JOHNSON, makes this an annual trip with his friends and family.

20.    The Plaintiffs boarded SOUTHWEST Flight 5985 and it was as any normal flight, the four men arrived in plenty of time, passed through security procedures, and found their seats on board the flight.

21.    Defendant SOUTHWEST was acting as a common carrier providing air services and was subject to a heightened duty of care to Plaintiffs as passengers on Defendant SOUTHWEST's flight.

22.    Prior to the flight departing, a younger Caucasian male Southwest Flight Attendant (ATTENDANT) approached KARIGACA and asked KARIGACA to turn down his music even though KARIGACA was not playing music.

23.    KARIGACA had previously been playing music, but had turned it completely off after a fellow passenger requested that he do so.

24.    ATTENDANT #1 then asked KARIGACA to deplane claiming that KARIGACA was still playing loud music and that he was intoxicated.

25.    Playing music, even loud chanting music, on Southwest Airline Flights is an acceptable event when participated by Caucasian passengers and on a Southwest Flight on December 6, 2019, a large number of San Francisco 49ers Fans, including many Caucasian passengers, screamed and chanted "Bang Bang Niner Gang" in a loud, raucous, and disturbing manner.

26.    The December 6, 2019 "Bang Bang Niner Gang" chant on SOUTHWEST was captured on video and reposted several times through social media.

27.     In the December 6, 2019 "Bang Bang Niner Gang" video, you can clearly see the SOUTHWEST logo on the interior of the plane and see several flight attendants in the video walk by while several white passengers loudly chant Bang Bang Niner Gang over and over.

28.     ATTENDANT then asked KARIGACA (as well as the three other men of color LABRADOR, JOHNSON, and LATTIMORE) to deplane.

29.     KARIGACA was not intoxicated and politely requested to speak with ATTENDANT's Supervisor.

30.     KARIGACA videotaped the conversation with ATTENDANT and the video clearly shows KARIGACA speaking to ATTENDANT in a polite, quiet manner.

31.     ATTENDANT then told KARIGACA that ATTENDANT "was the supervisor" and reiterated that KARIGACA and his three friends "were intoxicated" and needed to leave the plane.

32.     KARIGACA had an alcoholic beverage in the terminal bar prior to boarding the plane and witnessed another white passenger on this same SOUTHWEST flight drinking at the terminal bar with KARIGACA.

33.     KARIGACA then asked the ATTENDANT "what was the next step?" and ATTENDANT told KARIGACA that the [Alameda County] Sheriffs would be coming.

34.     The entire SOUTHWEST Flight 5985 was then deboarded and all of the passengers went back to the terminal.

35.     However, when KARIGACA, LABRADOR, JOHNSON, and LATTIMORE deboarded, all four men were greeted by a number of Alameda County Sheriff's Deputies and in front of all of the passengers, plus numerous passengers on other flights at Oakland Airport, the four men of color were promptly pushed up against a wall, cuffed, and arrested.

36.     According to the Alameda County Sheriff's Department Incident/Criminal Report, Case Number: 18-006457, "SWA [SOUTHWEST] has adopted a policy for individuals that cause a disturbance on board an aircraft.  They will deboard all compliant passengers for their safety prior to dealing with the problematic individuals."

37.     Although KARIGACA was ordered to deplane and was arrested along with his three other professional friends of color, the white passenger who had also been drinking at the same airport bar was not ordered to deplane and was not arrested by Sheriff's deputies.

38.     After deboarding, KARIGACA, LABRADOR, JOHNSON, and LATTIMORE were questioned and belittled in front of the widespread crowd, publically made to face the wall and handcuffed, and then spent the next several hours in Santa Rita Jail.

39.     KARIGACA's flight and the 49ers "Bang Bang" flight were principally related to a sporting event, however, because KARIGACA was not joined by numerous other white passengers, he and his three other friends of color were singled out by SOUTHWEST and made to deplane and face humiliating arrest by the Alameda Sheriffs Department.

40.     Plaintiffs' flight was to attend a notable black athlete in Jackie Robinson, and none of the four plaintiffs made it the next day to Dodgers Stadium to attend Jackie Robinson Day.

41.     Pursuant to the Incident/Criminal Report of the Alameda County Sheriff's Office, "Southwest Airlines wished to pursue a criminal complaint against KARIGACA, JOHNSON, LABRADOR, and LATTIMORE for interfering with the normal operations of their business."

42.     Further, and pursuant to the aforementioned report, "SWA Operations Manager, Barbara Saenz signed a citizen's arrest complaint on behalf of Southwest Airlines due to the delay caused for their customers."

43.     KARIGACA, LABRADOR, JOHNSON, and LATTIMORE were charged with California Penal Code § 602.1(a), interfering with a business, and LATTIMORE, **not** KARIGACA was also charged with California Penal Code § 647(f), public intoxication.

44.     None of the four men were given a breathalyzer nor did any of the four men of color give blood to prove their alleged intoxication.

45.     KARIGACA wrote in a letter submitted to SOUTHWEST on January 6, 2020 that "[t]he experience of being locked up in a cage has immediate and long-term implications for a human being; especially when this experience is unjust and unfounded." See Exhibit 1, attached herein.

46.     LABRADOR wrote in a letter submitted to SOUTHWEST on January 6, 2020 that "[n]ot only did [SOUTHWEST] discriminate and unjustly vilify my friends and me, they used their power to violate our rights and liberties as law-abiding honorable citizens.  We did absolutely nothing to warrant the harsh and humiliating treatment we endured that evening at the hands of Southwest employees and the Alameda County Sheriff's Department." LABRADOR further wrote that "while enduring this extremely traumatic experience, an Alameda County Sheriff attempted to provoke me, clearly making false assumptions as to why I was being arrested.  There have been far too many unfortunate incidents involving law enforcement and African American men.  For this reason I remained calm and adhered to the officer's demands." See Exhibit 2, attached herein.

47.     JOHNSON wrote in a letter submitted to SOUTHWEST on January 6, 2020 that "[t]oo often in society African American men are treated unfairly simply because of the color of their skin.  Southwest employees humiliated me and caused me to be incarcerated unjustly.  My financial well-being and personal safety were jeopardized.  I have been a long time, loyal customer of Southwest airlines and am disappointed by the treatment I received on the evening of April 14, 2018."

48.     LATIMORE wrote in a letter submitted to SOUTHWEST on January 6, 2020 that "I spent fifteen hours in a ten by six-foot jail cell with eight other men.  While this may not seem like a significant event to some, for me this was life altering.  My father died while in prison.  This was devasting to my family and me.  I currently have two cousins spending the rest of their lives in prison.  It has been one of my missions in life that I would never do anything that would place me in a position to cause me to spend one minute in jail.  The actions of an overzealous Southwest Airlines crew have ruined that now."  See Exhibit 4, attached herein.

49.     The Alameda County District Attorney's Office refused to file charges against these four men of color, and shortly thereafter, the Alameda County Superior Court ordered that all four arrest records were to be sealed.

50.     On this Saturday, April 14, 2018, KARIGACA, LABRADOR, JOHNSON, and LATTIMORE had their characters called into question and risked consequences before the Alameda County Superior Court.  The experiences they shared on April 14, 2018, as well as the 15 hours spent in jail was embarrassing and humiliating.

51.     The shock, embarrassment, and humiliation that each man suffered has been very troubling for all for men of color, as well as their families, and each man now has a profound fear of flying with SOUTHWEST.

52.     On January 6, 2020, Plaintiffs sent a demand letter to Southwest Airlines reiterating the aforementioned facts of this case.

53.     On January 24, 2020, Plaintiffs' counsel received an email from Southwest Airlines Customer Advocacy Senior Specialist Byron Anderson in response to the aforementioned demand.

54.     Among other points raised by Mr. Anderson he said, "[w]ith regard to the arrest of your clients, our flight crew shares that they [SOUTHWEST] were not pressing charges…we regret your clients' disappointment with the Alameda County Sheriff's Office's handling of the situation and your clients' overall inconvenience."

55.     Based upon notice of these new facts concerning the Alameda County Sheriff's Department, as stated in SOUTHWEST's January 24, 2020 email, Plaintiffs filed a claim against the Alameda Sheriff's Department on or about March 30, 2020.

56.     The claim forms against the Sheriff's Department were not filed at the time of the incident because Plaintiffs were unaware of the facts presented by SOUTHWEST in their January 24, 2020 email, and were operating exclusively on the facts stated in the Sheriff's Incident/Criminal report.

57.     On March 30, 2020, the Sheriff's Department sent an email response to Plaintiffs' March 30, 2020 complaint forms apparently denying Plaintiffs' claims.

58.     Plaintiffs bring this action on behalf of themselves and seek to end the discriminatory policies, patterns, and/or practices of Southwest Airlines and Alameda County Sheriff's Office.

59.     This civil rights lawsuit is brought to ensure that the promise of equal treatment embodied in federal and state anti-discrimination laws does not become a meaningless

guarantee to African American citizens in the United States. Federal law expressly provides that an "air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex or ancestry." 49 U.S.C. Section 40127(a). Nevertheless, over the last 12 years, reports of air carriers' discriminating against passengers based on race has increased.  In 2001, the Department of Transportation responded to incidents of air carrier discrimination by sending two emails to several major airlines cautioning airlines against targeting or otherwise discriminating against passengers based on race, color, national or ethnic origin, or religion.  Notwithstanding these strong cautioning statements by the Department of Transportation in 2001, and with the clear mandate of federal law, passengers such as plaintiffs have continued to be subject to discriminatory treatment by airlines. The Department of Transportation's "Air Travel Consumer Reports" which are issued monthly, has since 2002 documented complaints of discrimination by air carriers. The complaints are not insignificant in number.  See www.transporation.gov. Last visited April 14, 2020.

**IV.**
**FIRST CAUSE OF ACTION**
Discrimination Based on Race - Unruh Civil Rights Act - Cal. Civ. Code § 51, et seq.
(Against all Defendants)

60.    Plaintiffs hereby replead, reallege, and incorporate paragraphs 1 through 59, as though fully set forth herein.

61.    Pursuant to Section 51(b) of the Unruh Civil Rights Act, "[A]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the

**COMPLAINT FOR DAMAGES**

full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

62.    Pursuant to Section 51.5(a) of the Unruh Civil Rights Act, "[n]o business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers, because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics."

63.    Plaintiffs are all men of color, as KARIGACA, JOHNSON, and LATTIMORE are all African-American, and LABRADOR is Filipino/Chinese.

64.    SOUTHWEST is a business entity, conducting regular business within the State of California, and as such, is a business establishment subject to Cal. Civ. Code § 51.

65.    On April 14, 2018, Defendant SOUTHWEST escorted the four Plaintiffs off flight 5985 because they were all men of color, in direct violation of the Unruh Civil Rights Act.

66.    At all relevant times hereto, Plaintiffs' civil rights were violated under Cal. Civ. Code § 51 in California, more specifically at Oakland airport on April 14, 2018.

67.    Defendant SOUTHWEST is liable for the actions of its agents and employees, including ATTENDANT, directly and under the doctrine of *respondeat superior*.

68.     SOUTHWEST intentionally and purposefully discriminated against Plaintiffs, denying them full and equal accommodations and business services, in violation of Cal. Civ. Code § 51, when by and through its agents and employees, including ATTENDANT, SOUTHWEST wrongfully removed Plaintiffs from the airplane when Plaintiffs' actions were not dangerous nor inimical under 49 U.S.C. § 44902.

69.     Rather, as Plaintiffs' video shows, Plaintiffs were calm and polite to ATTENDANT and were singled out for purposes of color simply because they requested to speak with a supervisor.

70.     No one from Defendant SOUTHWEST observed any safety concerns or contentious communications with Plaintiffs, let alone any altercations or reasons to cause concern, except for the fact that Plaintiffs were men of color and Plaintiff KARIGACA requested to speak with a supervisor.

71.     Plaintiff KARIGACA noticed a white male on this same flight having drinks at the airport bar, but the white male was not ordered to deplane and arrested by the Alameda Sheriff's Department.

72.     Rather, Plaintiffs were singled out, racially profiled, and penalized for being of color and for asking to speak to a supervisor.

73.     SOUTHWEST had no legitimate basis or justification to remove Plaintiffs from the flight and deny them their contractual rights except for racial bias and discrimination, thereby making this discrimination intentional and purposeful.

74.     SOUTHWEST did nothing to verify or even slightly corroborate the complaint they apparently received regarding Plaintiffs to determine whether said complaints were genuine, authentic, and not the result of racial bias.

75.     Instead, without even questioning the other three men of color, SOUTHWEST removed Plaintiffs from the plane and, pursuant to the Alameda Sheriff's Department, pressed charges against the Plaintiffs for California Penal Code § 602.1(a), interfering with a business.

76.     According to SOUTHWEST, Defendant ALAMEDA had no right or cause to detain and incarcerate Plaintiffs, as SOUTHWEST's email dated January 24, 2020 stated that the SOUTHWEST flight crew for Flight 5985 was "not pressing charges" against the Plaintiffs.

77.     Further, Plaintiff LABRADOR wrote that "while enduring this extremely traumatic experience, an Alameda County Sheriff attempted to provoke me, clearly making false assumptions as to why I was being arrested."

78.     ALAMEDA is a public entity and much like SOUTHWEST, ALAMEDA detained and incarcerated Plaintiffs for no reason other than race as prohibited by the Unruh Act.

79.     ALAMEDA did not corroborate the alleged "intoxication" of Plaintiffs by way of a breath or blood test.

80.     Further, neither SOUTHWEST nor ALAMEDA made any effort to clear Plaintiffs' record and provide statements to the Superior Court despite each of the Defendants claiming it was the other Defendant that chose to press charges, detain, and incarcerate.

81.      These actions and inactions on the part of Defendants, and each of them, further perpetuates the intentional racial discrimination by Defendants, because once each Defendant could have assisted in clearing Plaintiffs' criminal records.

82.     Defendants, and each of them, were motivated by prejudice against Plaintiffs.

83.     As a proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages as set forth herein.

84.     Defendants' acts alleged herein were malicious, oppressive, despicable, and in the conscious disregard of Plaintiffs' rights.  As such, punitive damages are warranted against Defendant SOUTHWEST in order to punish and make an example of each of them.

85.     Plaintiffs are entitled to an award of attorney's fees and costs pursuant to Civ. Code § 52.

## V.
## <u>SECOND CAUSE OF ACTION</u>
Prohibition of Denial of Equal Rights Under the Law - 42 U.S.C. § 1981
(Against all Defendants)

86.     Plaintiffs hereby replead, reallege, and incorporate paragraphs 1 through 85, as though fully set forth herein.

87.     At all material times, defendant SOUTHWEST was an air carrier engaged in commercial air transportation services and at all material times Plaintiffs were passengers on defendant's airline.  During the passage of commercial air transportation Plaintiffs were entitled to travel and be free from discrimination in their travel, and to have nondiscriminatory passage and not be treated differently from other passengers when they travelled on commercial air carriage by Defendant SOUTHWEST on April 14, 2018.  Plaintiffs were further entitled to the bargained for performance of their contract by contracting party Defendant SOUTHWEST and as such were entitled to carriage on Flight 5985 on April 14, 2018.

88.     Plaintiffs as African-American/Asian-American males, are members of a racial minority, and have the same civil right to be treated equally in making and enforcing contracts and to be subject to the same punishments, pains, penalties, as white citizens, and to no other, pursuant to 42 U.S.C. § 1981.

89.     Stemming from this right, Plaintiff had the right to the performance, and when Plaintiffs contracted with SOUTHWEST, a commercial air carrier engaged in air transportation services for passage on Flight 5985 from Oakland to Burbank, as a paying passenger and contracting party, they had the right to be treated equally and in a manner free from discrimination pursuant to 42 U.S.C. § 1981.

90.     Plaintiffs had equal rights to the performance, benefits, privileges, terms, and conditions of the contract entered into with SOUTHWEST for travel on the commercial air carrier pursuant to 42 U.S.C. § 1981.

91.     Plaintiffs' civil rights under 42 U.S.C. § 1981 were violated when they were denied equal treatment in making and enforcing their contract with SOUTHWEST, and were not subject to the same punishments, pains, penalties, and exclusions as white citizens, and no other.

92.     Defendant SOUTHWEST is liable for the unlawful acts of its agents and employees both directly and under the doctrine of *respondeat superior*.

93.     Defendant SOUTHWEST engaged in racially motivated acts of intentional and purposeful discrimination on April 14, 2018, based on Plaintiffs' race as African-Americans, when Defendant SOUTHWEST removed Plaintiffs from Southwest Airlines Flight 5985 at Oakland International Airport (OAK), telling Plaintiffs that they were being removed for being "loud, intoxicated, and disruptive" while there was at least one white passenger who was also drinking with Plaintiffs, but he was not asked to be removed.  In addition, SOUTHWEST employees ordered Alameda County Sheriff's Deputies (approximately 10 deputies) to interrogate, humiliate, and arrest the four Plaintiffs and detain them in Santa Rita Jail for fifteen hours even though the Plaintiffs did not commit any crimes.  The Plaintiffs removal from Flight

5985 and subsequent arrest was the product of intentional racial discrimination, not of a rational determination based on actual or perceived facts that Plaintiffs presence was inimical to safety.

94.     Without lawful justification, privilege or immunity, and acting in an arbitrary and capricious and intentional manner, Defendants wrongfully removed Plaintiffs from Flight 5985 on April 14, 2018, and wrongfully detained and arrested plaintiffs when there was no basis for such removal and thereby Defendants engaged in acts of intentional discrimination based on Plaintiffs color and race.

95.     By deplaning Plaintiffs and telling Plaintiffs to deplane Flight 5985 in front of and within hearing distance of the other passengers on the subject flight, and in front of other passengers at the Oakland International Airport terminal and causing Plaintiffs to be detained and arrested and forced to spend fifteen hours in Santa Rita Jail by Alameda County Sheriff's Deputies, Defendants intentionally caused Plaintiffs to feel that they had been "singled out" and "targeted" as a person not wanted on the aircraft by Defendant SOUTHWEST and prosecuted and incarcerated by ALAMEDA because of their race and color, and said actions by Defendants, and each of them, made Plaintiffs feel unbearable humiliation, distress, and anguish.

96.     Further, these discriminatory actions of Defendants proximately caused Plaintiffs' damages in the form of delay, embarrassment, humiliation, mortification, fright, shock, mental anguish and emotional distress, denial of social pleasures and enjoyment, and damage to Plaintiffs' reputations.

///

///

# VI.
## THIRD CAUSE OF ACTION
Racial Discrimination Under Color of State Law - 42 U.S.C. § 1983
(Against Defendant SOUTHWEST)

97.     Plaintiffs hereby replead, reallege, and incorporate paragraphs 1 through 96, as though fully set forth herein.

98.     Pursuant to 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

99.     SOUTHWEST acted under color of state law and caused a constitutional deprivation of Plaintiffs' rights, namely the racial discrimination that resulted in emotional distress and humiliation for Plaintiffs.

100.    Plaintiffs are informed and believe that Defendant SOUTHWEST operates under color of state law because there has been federal funding for SOUTHWEST and SOUTHWEST receives federal funding.

101.    SOUTHWEST's willful, wanton, and malicious actions under the color of state law deprived Plaintiffs of constitutional rights under the Fourteenth Amendment to the United States Constitution.

102.    SOUTHWEST violated 42 U.S.C. § 1983 by the aforementioned statements and acts, including but not limited to, removing Plaintiffs from Flight 5985 even though Plaintiffs were not inimical to safety under 49 U.S.C. § 449012(b).

103.    As a direct and proximate consequence of the unconstitutional acts of SOUTHWEST, Plaintiffs sustained mental distress, pain, and suffering.

104.    The intentional, willful, and wanton act establishes a claim for punitive damages.

105.    As a direct and proximate result of SOUTHWEST's acts described herein, Plaintiffs have suffered and continue to suffer all damages proximately caused, in violation of 42 U.S.C. § 1983.

106.    Plaintiffs are entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## VII.
## FOURTH CAUSE OF ACTION
False Imprisonment (Against all Defendants)

107.    Plaintiffs hereby replead, reallege, and incorporate paragraphs 1 through 106, as though fully set forth herein.

108.    As described more fully above, Defendants, and each of them, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, caused Plaintiffs to be intentionally confined and falsely imprisoned in violation of their constitutional rights.

109.    As a result of these violations, Plaintiffs suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

**COMPLAINT FOR DAMAGES**

110.    The misconduct described in this count was without lawful privilege, objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

111.    The misconduct described was for an appreciable length of time, however short, which causes Plaintiffs to suffer harm.

112.    The misconduct described in this count was undertaken pursuant to the policy and practice of the Alameda County Sheriff's Department as more fully described above.

113.    Plaintiff requests relief as hereinafter described.

## VIII.
## <u>FIFTH CAUSE OF ACTION</u>
Malicious Prosecution (Against all Defendants)

114.    Plaintiffs hereby replead, reallege, and incorporate paragraphs 1 through 113, as though fully set forth herein.

115.    That Defendant SOUTHWEST commenced, was actively involved, and directed Defendant SHERIFFS which caused Plaintiffs to be arrested for supposedly being loud, disruptive, intoxicated, and "interfering with a business."  Plaintiff LATTIMORE was also charged with public intoxication.

116.    That those criminal proceedings ended in a termination in Plaintiffs' favor.

117.    That those criminal arrest records for Plaintiffs were all ordered sealed by Alameda County judges.

118.    Defendant SOUTHWEST acted without probable cause and that no reasonable person in SOUTHWEST's circumstances would have believed that there were grounds for causing Plaintiffs to be arrested and prosecuted.

119.    That Defendant SOUTHWEST acted primarily for a purpose other than to bring Plaintiffs to justice.

120.    That Defendant SOUTHWEST's conduct was a substantial factor in Plaintiffs' harm and Plaintiffs have suffered and will continue to suffer reasonable, foreseeable, and ascertainable damages, including but not limited to compensatory damages, emotional distress, and attorney's fees and costs.

121.    The conduct of Defendants and/or their agents/employees, as described herein, was malicious and done with a willful and conscious disregard for Plaintiffs' rights entitling Plaintiffs to an award of punitive damages from Defendant SOUTHWEST.

## IX.
## SIXTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress (Against all Defendants)

122.    Plaintiffs hereby replead, reallege, and incorporate paragraphs 1 through 121, as though fully set forth herein.

123.    Defendants SOUTHWEST and ALAMEDA's conduct, as alleged above through their outrageous egregious conduct, including but not limited to the removal of Plaintiffs off of Southwest Flight 5948 because of their race and subjecting them to the shock and humiliation of being interrogated and arrested in the Oakland Airport Terminal in front of all of the other passengers on the same flight as well as other passengers in the Oakland Terminal constituted extreme and outrageous conduct by Defendant SOUTHWEST and Defendant ALAMEDA.

124.    Plaintiffs are informed and believe and thereon allege that both Defendants' conduct, standing in a position of authority over Plaintiffs, acted with intent and deliberation

without regard to the health, safety, or well-being of Plaintiffs and caused Plaintiffs to suffer severe emotional and physical distress.

125.    KARIGACA wrote, "The psychological impact has caused me many sleepless nights and anxiety that impacts my daily life.  Spending 15 hours in a 10 x 6 jail cell with no air circulation and 8 other men has caused extreme psychological effects that include anxiety and claustrophobia.  A year and a half later, these physiological effects have only increased."  See Exhibit 1 attached herein.

126.    LABRADOR wrote, "It was absolutely debasing and dehumanizing being escorted off a commercial flight in front of all of our fellow passengers, being detained for hours at Santa Rita Jail, and having to explain and defend myself to family, friends, colleagues, and the Oakland Unified School District human resources officials.  This was a horrible ordeal to endure and then having to justify my professional and working integrity to people of importance in my life was devastating."  See Exhibit 2 attached herein.

127.    JOHNSON wrote, "(M)y friends and I disembarked we were handcuffed and placed in the back of police cars.  All of our fellow passengers witnessed the extremely humiliating experience.  We were treated inhumane(ly) and handcuffed in the jetway.  I felt demeaned and degraded.  Furthermore, while enduring this extremely traumatic experience, and Alameda County Sheriff attempted to provoke me, clearly making false assumptions as to why I was being arrested."  See Exhibit 3 attached herein.

128.    LATTIMORE wrote, "This experience was extremely humiliating and entirely unwarranted.  Not only did it reinforce the typical stereotype of African American men, which caused me great anguish, it made me question the convictions of my core beliefs.  Moreover,

this highly negative experience had detrimental consequences, personally and professionally." See Exhibit 4 attached herein.

129.    Plaintiffs are informed and believe and thereon allege that as a proximate result of both Defendants' extreme and outrageous acts, Plaintiffs suffered severe emotional distress in the form of humiliation, embarrassment, mental-anguish, anxiety, stress, and indignation. Both Defendants' acts were done with the willful knowledge that Plaintiffs would suffer severe harm and was the causation and a substantial factor in Plaintiffs suffering the harm as a result thereof.

130.    Plaintiffs are informed and believe and thereon allege that Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiffs' rights.  As such, punitive damages are warranted against Defendant SOUTHWEST in order to punish them and make an example of their actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.    For general damages according to proof;

2.    For special damages, according to proof;

3.    For punitive damages against Defendant SOUTHWEST;

4.    For costs of suit incurred herein,

5.    For reasonable attorney's fees to the extent allowable by law;

6.    Prejudgment and post judgment interest, as provided by law; and

7.    For such other and further or different relief as the Court may deem necessary, just, and proper.

8.      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 29 U.S.C. §

626(c)(2), Plaintiff demands a trial by jury in this action.

Dated:  April 14, 2020

Respectfully submitted,


By:   /s/ Nick Urick_____
Nick A. Urick
nurick@nickuricklaw.com
**LAW OFFICE OF NICKOLAS A URICK**
PO Box 371
La Puente, CA 91747
Tele: (626) 419-3600
Fax:  (626) 602-3836
Attorney for Plaintiffs

**COMPLAINT FOR DAMAGES**

EXHIBIT 1

Date: January 6th, 2020

Name:  Misha Karigaca
Age: 45
Education:  BA Sociology – UCLA, Teaching Credential - Sacramento St,
Administrative Credential – Cal State East Bay
Occupation:  Coordinator, Attendance & Discipline Oakland Unified School District

The experience of being locked up in a cage has immediate and long-term implications for a human being; especially when this experience is unjust and unfounded.

As a 45-year-old father, husband, life time educator, and graduate from the University of California, Los Angeles; I pride myself in having and making a positive impact on my community.  The experience I encountered on April 14, 2018 while on Southwest Flight 5985 has greatly challenged my belief and optimism as an African American male living in the United States.

The audacity of Southwest airlines employees to intentionally cause four men of color to be arrested simply because I asked to speak to a supervisor as to why I was being asked to get off the plane (and board another plane) is a prime example of why certain sub groups of our society continue to have to overcome unnecessary obstacles that greatly impact their lives long term.  The only explanation I had to why I was being kicked off the plane was that I was intoxicated.  I was perplexed for two reasons.  1) If I was intoxicated, why would I be asked to get on another plane? And 2) and most importantly... I did have a few beers at the bar adjacent to the gate.  I was sitting with an older white gentlemen who was also having some beers and we were discussing which of our alma maters were better (UC Berkeley or UCLA).  We both boarded the same plane and he was never told to get off the flight.

This unfortunate experience has caused me both personal and professional trauma and hardship that has caused tremendous life altering effects.  This unfortunate experience has caused both personal and professional trauma that will have a lasting effect.

The professional impact of this experience could have been catastrophic.  I have been a lifelong educator within the Oakland Unified Public School District, first as a teacher for 5 years, then a principal for 13 years, and currently I am a central office district employee.  When this incident occurred, I was in the process of earning a promotion within central office of Oakland Unified School District  I knew that any arrest record could jeopardize everything I worked so hard to achieve in my career.  That is why I took a proactive approach and informed my supervisor, the head of Human Resources, and our General Council of the experience and charges that I had pending against me.

This was an extremely humiliating experience that absolutely could have been avoided had Southwest employees made better decisions. And unfortunately, their

MISHA KARIGACA – Southwest Airlines Claim - Fight 5985                    Page | 2
Date: January 6th, 2020

decision to subject me to being arrested for no cause, will always be in the minds of
our district's highest leaders, despite the correct outcome that all charges were
eventually dropped against me and the three other men I was traveling with.

The psychological impact has caused me many sleepless nights and anxiety that
impacts my daily life. Spending 15 hours in a 10 x 6 jail cell with no air circulation
and 8 other men has caused extreme psychological effects that include anxiety and
claustrophobia.  A year and a half later, these physiological effects have only
increased.

It's so unfortunate that men of color are much more prone to being arrested, not
because of committing a crime, but rather because we are immediately perceived as
a threat based on someone else's perception of us. This is exactly what occurred
here. I firmly believe had I been a Caucasian male, I would never have been put
through this awful and trying experience. This incident continues to haunt me, and
every single day, my experience on Southwest has caused me to overthink my daily
living habits.  The stress that this continues to play in my life is something no other
human should have to endure.  I have even sought the assistance of a psychologist,
and that has not been able to curb the anxiety of the effects of this experience.

While sitting in jail, I thought about how I would explain this to my 12-year-old
daughter and 14-year-old son.  As a father, I pride myself on raising my children to
have the highest moral character possible, and to lead by example.  The mere
thought of having to explain this to my wife and children caused me so much
anxiety.  I knew this would greatly affect their belief in their father and the injustice
that occurs in this world.  This was by far the hardest and tear-filled talk I have had
with my children, and to this day I still wonder what impact this has had on their
belief in me and the world.

If we want to make this country as great as people say, it is imperative that the
people in positions of power, do not abuse their power by making knee-jerk
decisions.  Those decisions can have life-long implications that negatively affect the
lives of others, as has occurred here.


Respectfully,

Misha Karigaca

EXHIBIT 2

MANUEL LABRADOR – Southwest Airlines Claim - Flight 5985       Date: January 6, 2020

Name: Manuel Labrador Age: 46
Education: Masters Degree of Educational Leadership
Education Occupation: Teacher

The incident that occurred on April 14, 2018, which culminated in my detainment and arrest was unjust and demoralizing. It has been humiliating personally and professionally to explain and defend my character and judgment, on unsubstantiated trespassing charges, that were ultimately proven to be false and rightfully dismissed in a court of law. The actions of Southwest Airlines employees not only threatened my livelihood and job security as a tenured educator of 20 years in the Oakland Unified School District, but my very person because the Alameda County Sheriff's Department officers called to arrest us were very aggressive and looking to cause us trouble. They attempted to taunt and intimidate us so as to get a reaction from us, so they could do us bodily harm. Southwest employees placed my friends and me in a very precarious position, that never should have happened.

As an educator, I pride myself on prioritizing empathy and social justice in my teaching and pedagogy. I try to instill these values in my students and in my instruction, and advocate for equity and equality. It was glaringly obvious that these qualities were missing in the Southwest employees that evening. Not only did they discriminate and unjustly vilify my friends and me, they used their power to violate our rights and liberties as law-abiding honorable citizens. We did absolutely nothing to warrant the harsh and humiliating treatment we endured that evening at the hands of Southwest employees and the Alameda County Sheriff's Department.

It was absolutely debasing and dehumanizing being escorted off a commercial flight in front of all of our fellow passengers, being detained for hours at Santa Rita Jail, and having to explain and defend myself to family, friends, colleagues, and the Oakland Unified School District human resources officials. This was a horrible ordeal to endure and then having to justify my professional and working integrity to people of importance in my life was devastating.  The stress and anxiety of potentially losing my job and my career has led me to seek counseling. Managing my professional work and my personal life during this tremendously terrible ordeal has been extremely challenging. Both professional and personal relationships have been strained and exhausted as a result of this unwarranted and unnecessary event. All plans that I had for seeking promotion and job advancement, as well as beginning graduate coursework have been placed on hold as I deal with the trauma and anxiety from this awful incident. Further, taking the necessary time off work to address these legal issues has been both embarrassing and exhausting.

All of the trouble, stress, anxiety, embarrassment, and humiliation I have endured could have

MANUEL LABRADOR – Southwest Airlines Claim - Flight 5985          Date: January 6, 2020

been avoided with an appropriate conversation by culturally competent Southwest Airlines employees. Southwest prides itself on their positive public perceptions and customer service, and those standards were unquestionably not met on that evening. Southwest Airlines should be embarrassed and remorseful that an entire plane was asked to deboard, subsequently delayed for hours, and four gentlemen of color were unjustly arrested as a result of its employees' incompetency and terrible judgment. The ramifications and consequences of such actions are life altering, and will have negative effects for years to come. Instead of focusing on promotions and self-betterment, I know need have to focus on repairing my tarnished reputation with my friends and colleagues all thanks to SouthWest.

Respectfully,

Manuel Labrador

# EXHIBIT 3

MARCUS JOHNSON – Southwest Airlines Claim - Fight 5985                    Page | 1
Date: October 17, 2019

Name: Marcus Johnson
Age:   45
Education: UCLA, Bachelor of Arts
Occupation:  Banking Executive

On April 14, 2018, four of my close friends and I were headed to Los Angeles to attend
Jackie Robinson Day at Dodger Stadium. Jackie Robinson Day is a celebration of the
integration of African Americans in Major League Baseball and an event that has been a
very important annual tradition for my friends and family for years. However, an
unfortunate set of events led to my unwarranted arrest caused by Southwest Airlines
employees on Flight 5985 at Oakland International Airport.

The entire plane was asked to deboard, and when my friends and I disembarked we
were handcuffed and placed in the back of police cars.  All of our fellow passengers
witnessed the extremely humiliating experience. We were treated inhumane and
handcuffed in the jetway. I felt demeaned and degraded. Furthermore, while enduring
this extremely traumatic experience, an Alameda County Sherriff attempted to provoke
me, clearly making false assumptions as to why I was being arrested. There have been
far too many unfortunate incidents involving law enforcement and African American
men. For this reason I remained calm and adhered to the officer's demands.

I have been in the banking industry for over two decades. I am a graduate of the
University of California at Los Angeles and currently a Senior Vice President for a major
financial institution. I am also a husband and father of a 12 year old daughter. I take
care of my family and customers and treat everyone with respect. I also serve the public
after working hours volunteering with the Cancer Support Community, Brotherhood
Crusade, NAACP, and Lutheran Social Services. For years, I have been generous with
my time and money to help those in need. I take pride in setting an example worth
following for my family, friends, and employees. What happened to me on Flight 5985 in
April is something I will never forget. I was not approached by the Southwest
representative who boarded the plane. In fact, I was never personally approached by
anyone as I sat in my seat. The first official who spoke to me was the officer who placed
me under arrest in the jet bridge.

At the time this incident occurred, I had recently accepted a new and highly sought after
position. My family and I were caused considerable stress with an uncertain
employment future. Fortunately I was allowed to provide my future employer the judge
approved Petition to Seal.

Too often in society African American men are treated unfairly simply because of the
color of their skin. Southwest employees humiliated me and caused me to be
incarcerated unjustly. My financial well-being and personal safety were jeopardized. I
have been a long time, loyal customer of Southwest airlines and am disappointed by the
treatment I received on the evening of April 14, 2018. I would expect more from
Southwest and its employees, as Southwest has a reputation for acceptance and
inclusion.

MARCUS JOHNSON – Southwest Airlines Claim - Fight 5985                    Page | 2
Date:  October 17, 2019


Respectfully,

Marcus Johnson

EXHIBIT 4

Kenya Latimore
47 years old
Afters School Site Coordinator & Montera Middle School Athletic Director


I am a proud African-American male and a husband and father of three boys. I was born and raised in Oakland, CA.  From an early age it was instilled in me that I would not become a statistic, like many in my family and community. I was raised knowing that I would be a positive influence in my neighborhood and city. My entire life I have strived hard to accomplish this goal.  All my life I have been told that if you do the correct things in life then you have nothing to worry about because authorities will look past the color of your skin and look at your actions. But the events that unfolded on April 14, 2018 have shaken this core teaching from my upbringing.

While sitting with a group of four men of color we were removed from the plane and arrested for something that could have been solved with a simple conversation. Rather than resolve the situation in a civil and peaceful way, Southwest employees chose to deboard the entire plane and contact the Alameda County Sheriff's department to have the only four people of color on the plane handcuffed and arrested, while other passengers looked on.

This experience was extremely humiliating and entirely unwarranted. Not only did it reinforce the typical stereotype of African American men, which caused me great anguish, it made me question the convictions of my core beliefs. Moreover, this highly negative experience had detrimental consequences, personally and professionally.

I spent fifteen hours in a ten by six-foot jail cell with eight other men. While this may not seem like a significant event to some, for me this was life altering. My father died while in prison. This was devastating to my family and me. I currently have two cousins spending the rest of their lives in prison. It has been one of my missions in life that I would never do anything that would place me in a position to

cause me to spend one minute in jail. The actions of an overzealous Southwest Airlines crew have ruined that now.  The psychological effects of spending those

3

long hours in jail and contemplating the experiences of my father and other family members has been traumatic and agonizing.

Had I done something wrong, I could live with the consequences of my actions, but I did absolutely nothing wrong to warrant such shocking and distressing treatment. This was further confirmed by the fact that all charges were dismissed by the Alameda County District Attorney's Office. As time has passed, the physiological effect of this event and the treatment I was subjected to has not dissipated, and in fact has increased.

This incident caused me to have to accept the harsh reality that as an African American man in this country, I could be arrested simply because of someone else's inaccurate and negative perception of me. This realization has been quite overwhelming and crushing. It has caused me to change my daily habits and live in constant stress of a similar event happening again. While I sat in jail, I agonized over how I would explain this to my wife, mother, three children, and employer. As a husband, son, father, and proud member of this community, I have been proud of the fact that I had never spent one minute in a jail cell, and now this was no longer true. Those were some of the longest 15 hours of my life, and I would not wish the stress, anxiety, or agony on anyone else.

From a young age, I have always strived to help my fellow being, including tutoring classmates from elementary school through middle school, and into high school. As a young adult, I worked in various summer programs with the youth of Oakland and as an adult in college, attending U.C. Berkeley, I continued to be a full-time tutor. I continued in this field professionally, and I have worked in education since 2001. I am currently a Site Coordinator for an after-school program, as well as a coach for various sports teams, and the Athletic Director for Montera Middle School.

Having to contact my employer about my arrest was one of the hardest calls I have had to make in my life. I knew this arrest could jeopardize my career since I work directly with students. My employers, Oakland Unified School District and Bay Area Community Resources were willing to forgo taking any action pending the outcome of the criminal matter. Such leeway was given by my employer because of commitment to teaching and child development. It was an extremely stressful

six months of my life, while my wife and I waited for the criminal matter to outcome, and whether I would be able to keep my job and continue to provide for

3

my family. And while, I did not lose my positions as a result of this incident. As, I continue to advance my career, my fear is that future employers will always be aware of this incident.

In my various roles, I always stress the importance of being a good citizen and not doing anything that can cause the authorities to seek one out. But now I know that even if you do nothing wrong, you can be accused of wrongdoing, simply because of the color of your skin. While I will continue to stress the importance of being a good citizen to my students, I personally now have a very hard time believing that being a good citizen is enough to keep you from being unlawfully detained and it hurt me to the core that this is not always the case.

If we want to make this country one that we can all be proud of, it is mandatory that people in positions of power, use that authority wisely, and not abuse it simply because they can or because they cannot relate to another group of people. They need to understand that their decisions can have life changing implications that can greatly affect the lives of others, as occurred here.

Respectfully submitted,

Kenya Latimore