UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS JOHNSON, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SOUTHWEST AIRLINES CO., et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-02598-SI<br><br>**ORDER DENYING DEFENDANT SOUTHWEST AIRLINES'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 23 |

Before the Court is a motion to dismiss plaintiffs' First Amended Complaint ("FAC") filed by defendant Southwest Airlines Co. ("Southwest") pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f) respectively. The Court finds this matter appropriate for resolution without oral argument and **VACATES** the November 13, 2020 hearing. For the reasons set forth below, the Court **DENIES** the motion to dismiss.

## BACKGROUND

Plaintiffs Misha Karigaca, Marcus Johnson, Kenya Latimore, and Manuel Labrador (collectively, "plaintiffs") purchased Southwest Airlines flight tickets to attend the annual celebration of Jackie Robinson Day at Dodger Stadium held on April 15, 2018. Dkt. No. 19 ("FAC") ¶ 21. Plaintiffs have been friends since college, are avid professional baseball fans, and all reside in California. *Id.* ¶¶ 6, 8, 10, 12, 20. Mr. Karigaca, Mr. Johnson, and Mr. Latimore are African American males. *Id.* ¶¶ 6, 8, 12. Mr. Labrador is a Filipino/Chinese American male. *Id.* ¶ 10. On April 14, 2018, plaintiffs boarded Southwest Flight 5985 with service from Oakland, California to Burbank, California. *Id.* ¶¶ 21, 25. The FAC alleges Southwest Flight 5985 was less than half full on April 14, 2018, allowing passengers to spread out about the plane. *Id.* ¶ 26. Plaintiffs did not sit

next to each other, instead sat in multiple rows and aisles. FAC ¶ 34. Mr. Karigaca sat in the aisle seat of the exit row; after sitting down he began playing music from his Bluetooth speaker. *Id.* ¶¶ 29, 35. The FAC alleges the "volume was not loud and was a level '4' on a scale of 1 to 10." *Id.* ¶ 35. The FAC alleges after one minute a Caucasian passenger, seated in the aisle seat in the row opposite and one row behind Mr. Karigaca, respectfully asked Mr. Karigaca to turn down the volume. *Id.* ¶ 36. Instead of turning down the volume, Mr. Karigaca turned the music off. *Id.* ¶ 37.

The FAC alleges that a minute or so later, a Southwest Flight Attendant, Joshua Meesc, a Caucasian male, approached Mr. Karigaca. *Id.* ¶ 38. Mr. Meesc asked Mr. Karigaca to turn down his music even though it was allegedly already turned off. FAC ¶ 38. Mr. Karigaca spoke with Mr. Meesc quietly and politely while Mr. Karigaca recorded the conversation with his cell phone. *Id.* ¶ 39. Mr. Meesc asked Mr. Karigaca to deplane claiming Mr. Karigaca was intoxicated. *Id.* ¶ 40. In response, Mr. Karigaca calmly told Mr. Meesc he was not intoxicated. *Id.* ¶ 41.

Plaintiffs allege Mr. Meesc then stated he wanted all plaintiffs to be removed from the flight along with Mr. Karigaca even though Mr. Meesc had not spoken to Mr. Johnson, Mr. Latimore, or Mr. Labrador.[1] *Id.* ¶ 42. Mr. Karigaca politely asked to speak with Mr. Meesc's supervisor to which Mr. Meesc responded he was the supervisor. *Id.* ¶¶ 48-49. Mr. Meesc reiterated[2] that Mr. Karigaca and his three friends "were intoxicated" and needed to leave the plane, despite never speaking to Mr. Johnson, Mr. Latimore, or Mr. Labrador. FAC ¶ 49. Mr. Meesc then told Mr. Karigaca that the Alameda County Sheriffs would be arriving to the scene. *Id.* ¶ 51. The entire Southwest flight was deboarded; plaintiffs deboarded with the rest of the passengers without refusal. *Id.* ¶¶ 52-54. The FAC admits Mr. Karigaca had "an alcoholic beverage" at the terminal bar prior to boarding. *Id.* ¶ 50. However, the FAC also alleges Mr. Karigaca noticed a white passenger, on the same flight, who had also been drinking at the terminal bar with Mr. Karigaca and who "was never told to get

---

[1] Plaintiffs do not allege whether Mr. Meesc provided an explanation at this time as to why *all* plaintiffs needed to be removed from the flight.

[2] The FAC alleges Mr. Meesc "*reiterated* that K[arigaca] and his three friends, of whom Meesc never spoke to 'were intoxicated' and needed to leave the plane" however, this is the first indication in the FAC that Mr. Meesc claimed all four plaintiffs were intoxicated. FAC ¶ 49 (emphasis added).

off the flight." FAC ¶ 50; Dkt. No. 19-1 at 4 (FAC attached Ex. 2 – Misha Karigaca Letter).

As the passengers deboarded, a Caucasian Southwest Flight Attendant named Kallye Silles, and an Alameda County Sheriff's Officer ("Sheriff") stood at the door of the plane. FAC ¶¶ 55-56. Plaintiffs allege "[Ms.] Silles and Sheriff viewed each passenger as they deboarded the plane, and Sheriff pointed only to men of color and asked [Ms.] Silles in a menacing tone, 'Is he part of the group?'" *Id.* ¶ 57. Plaintiffs were the only people of color on the plane that plaintiffs can recall. *Id.* ¶ 43. The FAC alleges the Sheriff did not point to Caucasian passengers or use a menacing tone with non-people of color. *Id.* ¶ 58. Ms. Silles responded affirmatively to the Sheriff for each plaintiff. *Id.* ¶ 59. Upon hearing "He is one of them!"[3] the Sheriff made plaintiffs stand against a wall in front of the other passengers and travelers in the airport, as ten Alameda County Sheriff's Deputies surrounded them. *Id.* ¶ 60. After being detained, plaintiffs were placed in handcuffs and arrested. FAC ¶ 61. The Alameda County Sheriffs did not conduct field sobriety tests, use a breathalyzer, or draw blood from plaintiffs. *Id.* ¶ 64. After plaintiffs were detained and arrested, plaintiffs spent several hours[4] in Santa Rita Jail in Alameda County. *Id.* ¶ 65.

Plaintiffs allege they were racially profiled by Southwest due to their "urban attire" and "urban mannerisms." *Id.* Plaintiffs were not given the opportunity to later board another flight or rent a car to attend Jackie Robinson Day in Los Angeles. *Id.* ¶ 66. Plaintiffs allege Southwest "commenced, was actively involved, and directed A[lameda], which caused [p]laintiffs to be arrested for non-objective allegations for being loud, disruptive, intoxicated, and interfering with a business, wherein [p]laintiff L[atimore] was also charged with public intoxication." *Id.* ¶ 168. Ultimately, the Alameda County District Attorney's Office refused to file charges against plaintiffs, none of plaintiffs were convicted of anything, and the Alameda County Superior Court sealed plaintiffs' arrest records. FAC ¶¶ 67-68.

On January 6, 2020, plaintiffs sent a demand letter to Southwest detailing the above allegations. *Id.* ¶ 70. On January 24, 2020, Southwest responded arguing plaintiffs' grievance was

---

[3] Presumably, this statement was made by Ms. Silles. The FAC is unclear. *Id.* ¶¶ 58-60.

[4] Mr. Latimore alleges he "spent fifteen hours in a ten by six-foot jail cell with eight other men." Dkt. No. 19-1 at 13 (FAC attached Ex. 5 – Kenya Latimore Letter).

United States District Court
Northern District of California

with Alameda County because *Southwest* did not press charges against plaintiffs. *Id.* ¶ 71. On April 14, 2020, plaintiffs filed their original complaint. Dkt. No. 1 ("Compl."). On August 11, 2020, plaintiffs filed their FAC against Southwest and Alameda County alleging five causes of action against both defendants, namely: (1) 42 U.S.C. § 1981 and (2) 42 U.S.C. § 1983, and State laws: (3) California's Unruh Civil Rights Act, (4) Intentional Infliction of Emotional Distress, and (5) Malicious Prosecution. FAC ¶ 19. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Southwest has moved to dismiss plaintiffs' First Amended Complaint for failure to plead sufficient facts to state any cause of action for intentional discrimination. Dkt. No. 23-1 ("MTD") at 13.[5] Additionally, Southwest argues plaintiffs' state law claims (claims three through five), and federal claim under 42 U.S.C. § 1983 (claim two) are preempted by the Federal Aviation Act. MTD at 21. Further, Southwest moves the Court to strike paragraphs 75-88 from the FAC, should the Court not dismiss the FAC in its entirety. *Id.* at 30.

**LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]'

---

[5] For ease of reference, citations to page numbers refer to the ECF branded number un the upper right corner of the page.

devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the non-moving party. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

## DISCUSSION

### I.  Federal Aviation Act Preemption

Southwest moves to dismiss plaintiffs' second, third, fourth, and fifth causes of action, namely: 42 U.S.C. §1983 claim, California's Unruh Civil Rights Act, Intentional Infliction of Emotional Distress, and Malicious Prosecution, arguing they are preempted by the Federal Aviation Act ("FAA"), 49 U.S.C. § 40101 *et seq*. MTD at 21. Southwest argues all four causes of action "arise from a decision made by a commercial airline regarding the operation of a scheduled passenger flight." *Id.*

The FAA primarily sets forth federal law for the economic regulation of airlines and airline safety. 49 U.S.C. § 40101 *et seq*. *See e.g.*, *Montalvo v. Spirit Airlines*, 508 F.3d 464, 473 (9th Cir. 2007) (airline safety includes such matters as in-flight warnings); *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 786 (6th Cir. 1996) (navigable airspace and noise control); and *Abdullah v. American Airlines*, 181 F.3d 363, 369 (3d Cir. 1999) ("pilot certification, pilot pre-flight duties, pilot flight responsibilities, and flight rules."). The FAA states an "air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902 (b). The pilot of an aircraft is directly responsible for and has final authority of the operation of the aircraft. 14 C.F.R. § 91.3(a). Federal regulations expressly prohibit pilots of civil aircraft from allowing a person who appears to be intoxicated to be carried in that aircraft. 14 C.F.R. § 91.17(b). Additionally, "[n]o certificate holder [operating the aircraft] may allow any person to board any of

its aircraft if that person appears to be intoxicated." 14 C.F.R. § 121.575(c).

Southwest argues plaintiffs' second through fifth claims are preempted by federal regulations because Southwest's decided to remove plaintiffs from the flight due to plaintiffs' "appearance of intoxication; and refusal to comply with the crew's requests to deplane." MTD at 27. Further, Southwest argues "state law claims which implicate a carrier's decision to deny boarding or remove a passenger from a flight for safety reasons" are routinely dismissed by courts in the "Ninth Circuit and beyond[.]" MTD at 24.

However, there are instances in which motions to dismiss state law claims based on federal aviation statute preemption have been denied. For example, in *Chowdhury v. Northwest Airlines Corp.*, 238 F. Supp. 2d 1153 (N.D. Cal. 2002) defendant's motion to dismiss plaintiff's federal and state law anti-discrimination claims was denied because, at that stage of the proceedings, there was no apparent conflict between the federal or state civil rights law and federal aviation law. *Chowdhury*, 238 F. Supp. 2d at 1156. Additionally, in *Makhzoomi v. Southwest Airlines Co.*, No. 18-CV-00924-DMR, 2018 WL 3861771, at *8 (N.D. Cal. Aug. 14, 2018), a matter strikingly similar to the one at bar, the court denied a Southwest employee's motion to dismiss plaintiff's allegations and claims based an FAA preemption. Both *Makhzoomi* and the case at bar involve passengers, people of color, who were removed from a Southwest flight by a Southwest employee without an apparent or observed safety threat. In *Makhzoomi*, plaintiff alleged he was discriminated against for speaking Arabic while on the phone with a family member. *Makhzoomi*, 2018 WL 3861771 at *2. In this case, plaintiffs allege Mr. Karigaca briefly played music before he, and the other three passengers of color not seated directly with Mr. Karigaca, were asked to deplane. Dkt. No. 19 (FAC) ¶¶ 34-37, 42. In both cases, plaintiffs filed claims under 42 U.S.C. § 1981, California's Unruh Civil Rights Act, and Intentional Infliction of Emotional Distress based on the treatment against them by Southwest and Southwest personnel. The court in *Makhzoomi* denied the motion to dismiss based on preemption finding the argument premature due to the numerous issues of fact. *Makhzoomi*, 2018 WL 3861771 at *8. The Court DENIES the instant motion to dismiss on the preemption argument for the same reason.

Southwest cites *Mercer v. Southwest Airlines Co.* ("*Mercer I*"), No. 13-CV-05057-MEJ,

6

2014 WL 4681788, at *5 (N.D. Cal. Sept. 19, 2014) in support of its preemption argument, but that case is inapposite.  Ass the Court in *Makhzoomi* noted, the pleadings in *Mercer I* more clearly articulated a safety concern where the plaintiff admitted he was explicitly told by a flight crew members that the Captain considered plaintiff to be a security threat.  *Makhzoomi*, 2018 WL 3861771, at *7 (citing *Mercer I*, 2014 WL 4681788, at *5).  By contrast, the Court in *Makhzoomi* found the allegations, as pled, did not clearly indicate a security concern as in *Mercer I,* and denied the motion to dismiss based on preemption, finding "it is premature to do so at this time,"  since "'it is difficult to resolve the preemption issue without discovery and a clear understanding of what the facts actually are.'" *Id.* at *8 (citing *Chowdhury v. Northwest Airlines Corp.*, 238 F. Supp. 2d 1153, 1157 (N.D. Cal. 2002)).

Southwest's motion to dismiss asks the Court to infer from the FAC that plaintiffs were the subject of a safety concern due to suspected intoxication and that Southwest's decision to remove plaintiffs was not pretextual.  As in *Makhzoom,* such a finding is premature on a motion to dismiss.  The motion to dismiss plaintiffs' second, third, fourth, and fifth claims based on FAA preemption is denied without prejudice to Southwest raising their preemption argument on more fully developed factual record.

**II.     Motion to Dismiss 12(b)(6)**

Alternatively, Southwest argues plaintiffs' claims are based on intentional racial discrimination (claims 1-5) and should be dismissed for failure to state a claim.  Plaintiffs' claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and California's Unruh Civil Rights Act (claims 1, 2, and 3) are based on the alleged intentional racial discrimination.  Plaintiffs' claims for intentional infliction of emotional distress and malicious prosecution (claims 4 and 5) stem from Southwest's alleged discriminatory conduct.

**A. Discrimination Claims**

The FAC adequately alleges plaintiffs belong to a protected class as African American and

7

Filipino/Chinese American individuals. FAC ¶¶ 6, 8, 10, 12. Plaintiffs allege Southwest grouped Mr. Johnson, Mr. Karigaca, Mr. Labrador, and Mr. Latimore together because of their race and color when requiring all four plaintiffs to deplane. *Id.* ¶¶ 57, 111. Southwest argues plaintiffs' discrimination claims all turn on the same showing of racial discrimination. MTD at 13-15. Southwest argues the FAC does not adequately allege "any reference to race, innuendo or disparate treatment of similarly situated passengers (who were not African-American or Filipino/Chinese American) from which racial animus can be inferred." MTD at 18.

To prevail on a 42 U.S.C. § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020). "The guarantee that each person is entitled to the 'same right ... as is enjoyed by white citizens' directs our attention to the counterfactual—what would have happened if the plaintiff had been white? This focus fits naturally with the ordinary rule that a plaintiff must prove but-for causation." *Comcast Corp.*, 140 S. Ct. 1009 at 1015.

Plaintiffs summarize Southwest's alleged discriminatory acts as follows: (1) as the only men of color on the flight, as far as plaintiffs were aware, plaintiffs were accused of being intoxicated without explanation; (2) the removal of all four men of color on the flight was demanded despite not being seated together; (3) plaintiffs allege they were not intoxicated nor did they behave as such, to the contrary, they behaved calmly and with composure; (4) Mr. Meesc did not even speak to three of the four plaintiffs before asking them to deplane and (5) the Caucasian male passenger who was also drinking by the gate prior to boarding was not asked to deplane, nor was he singled out or detained. FAC ¶¶ 34, 39. 42-43, 50; Dkt. No. 29 ("Opp'n") at 16. Specifically, the FAC alleges plaintiffs were not being a nuisance and that when Mr. Karigaca was asked to turn down his music, he turned it off completely. FAC ¶ 37. Additionally, Mr. Johnson alleges, "I was not approached by the Southwest representative who boarded the plane. In fact, I was never personally approached by anyone as I sat in my seat. The first official who spoke to me was the officer who placed me under arrest in the jet bridge." Dkt. No. 19-1 at 10 (FAC, attached Ex. 4 – Marcus Johnson Letter).

Southwest argues "[p]laintiffs appeared intoxicated, and presented a potential safety threat

8

1   when they refused to comply with crew instructions." MTD at 8.  However, the FAC alleges
2   plaintiffs displayed no actions inimical to safety nor did they act or otherwise indicate they were
3   intoxicated. FAC ¶¶ 127-28.  Much like in *Makhzoomi*, airline personnel did not ask plaintiffs any
4   safety-related question "relevant to whether [plaintiffs] posed a safety threat, and the complaint
5   contains no allegation that [plaintiffs] w[ere] acting in a manner that was inimical to safety."
6   *Makhzoomi*, 2018 WL 3861771, at *4 (citation omitted).  The FAC alleges: Mr. Karigaca was the
7   *only* plaintiff who consumed alcohol before boarding the plane, Mr. Karigaca was the *only* plaintiff
8   who played music while on board, which he turned off immediately after being asked to lower the
9   volume, Mr. Karigaca was the *only* plaintiff approached by Mr. Meesc, and Mr. Karigaca was the
10  *only* plaintiff directly accused of appearing intoxicated.  Yet, all four men of color were asked to
11  deplane.
12      Additionally, the FAC alleges two Southwest employees, Mr. Meesc and Ms. Silles, grouped
13  plaintiffs together when Mr. Meesc arbitrarily determined the four men of color appeared
14  intoxicated and when Ms. Silles only pointed at men of color when identifying "the group" to
15  Alameda Sheriffs. FAC ¶¶ 49, 57.  Furthermore, plaintiffs allege facts directing the Court to engage
16  in the counterfactual – what would have happened if plaintiffs had been white?  The FAC alleges
17  plaintiffs recognized a Caucasian passenger who had been drinking before boarding, who was not
18  accused of appearing intoxicated by Southwest personnel, nor grouped with plaintiffs when asked
19  to deboard and while deboarding.  FAC ¶¶ 39-41; Dkt. No. 29 ("Opp'n") at 16.  Accordingly, the
20  Court finds plaintiffs have adequately plead their intentional racial discrimination claims.
21
22      **B.  Malicious Prosecution**
23      Finally, Southwest argues plaintiffs' malicious prosecution claim should be dismissed for
24  failure to state a claim.  In California, the elements of a malicious prosecution claim are that the
25  prosecution: (1) was initiated by or at the direction of the defendant and was pursued to a legal
26  termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with
27  malice. *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006) (citing *Sheldon Appel Co. v.*
28  *Albert & Oliker*, 765 P.2d 498, 501 (Cal. 1989)).

1           Plaintiffs allege Southwest "commenced, was actively involved, and direct[ed] A[lameda], which caused [p]laintiffs to be arrested for non-objective allegations for being loud, disruptive, intoxicated, and interfering with a business, wherein [p]laintiff L[atimore] was also charged with public intoxication." FAC ¶ 168. Specifically, plaintiffs allege Southwest flight attendant, Mr. Meesc, told Mr. Karigaca the Alameda County Sheriffs were on their way. *Id.* ¶ 51. It was another Southwest flight attendant, Ms. Silles, who identified plaintiffs to the Sherriff while all the passengers on the flight were deboarding. *Id.* ¶ 59. The FAC alleges a Southwest flight attendant stated, "He is one of them," and plaintiffs were subsequently surrounded and detained by Alameda County Sheriff's Deputies. *Id.* ¶ 60. The criminal proceedings against plaintiffs ended in plaintiffs' favor and plaintiffs' arrest records were sealed. *Id.* ¶ 175. The California Supreme Court has previously held, "[v]ictory following a trial on the merits is not required [for a malicious prosecution claim]. Rather, 'the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit.'" (citation omitted). *Siebel v. Mittlesteadt*, 41 Cal. 4th 735, 741, 161 P.3d 527, 531 (2007) (citing *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 342 (2004), 9 Cal. Rptr. 3d 97, 83 P.3d 497.). Plaintiffs argue that because Alameda County District Attorney's Office refused to file charges and because the Alameda County Superior Court sealed plaintiffs' records, it can be inferred that "there was no merit to the [p]laintiffs' arrest, or that a verdict would be decided in the [p]laintiffs' favor." Opp'n at 21.

           The Court finds plaintiffs have adequately alleged the action was initiated by Southwest's conduct on April 14, 2018. As stated above, the Court finds plaintiffs sufficiently allege Southwest's reason for removing plaintiffs was pretextual and thereby, without probable cause. As such, plaintiffs have also adequately alleged racial animus on the part of Southwest to satisfy the third element for a malicious prosecution claim.

# CONCLUSION[6]

For the foregoing reasons and for good cause shown, the Court hereby DENIES Southwest's Motion to Dismiss plaintiffs' claims. Regarding Southwest's Motion to Strike paragraphs 75-88 of the First Amendment Complaint, the Court hereby GRANTS with leave to amend. A Second Amended Complaint may be filed on or before December 18, 2020.

**IT IS SO ORDERED**.

Dated: November 24, 2020

SUSAN ILLSTON
United States District Judge

---

[6] Southwest also submits a motion to strike with respect to paragraphs 75-88 of the FAC. Dkt. 23 (MTD) at 30. These paragraphs detail events of societal unrest from May 25, 2020 to August 31, 2020 due to police and general violence against African Americans, nation-wide protests, and the local and federal government response. The Court hereby GRANTS the motion to strike paragraphs 75-88 with leave to amend. The chronology detailed in paragraphs 75-88 could be relevant as examples of how unconscious bias and/or racism can play out in the United States, however, as plead, they do not tie into plaintiffs' allegations and causes of action. This portion of the FAC is void of sufficient connection to the instant action, therefore paragraphs 75-88 are hereby STRICKEN.